1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10    ERIC D. RICE,

11              Petitioner,                    No. CIV S-02-0848 GEB JFM P

12        vs.

13    CHERYL PLILER, Warden,

14              Respondent.                     FINDINGS AND RECOMMENDATIONS

15    _____/

16              Petitioner is a state prisoner proceeding through counsel with an application for a

17    writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1999 conviction in

18    Los Angeles County Superior Court[1] on charges of second degree robbery and the sentence of

19    life in prison imposed thereon under California's Three Strikes Law.  Petitioner claims that (1)

20    his constitutional rights were violated by a jury instruction requiring jurors to report holdouts to

21    the court; (2) his sentence violates the Eighth Amendment; and (3) his constitutional rights were

22    violated because he was incompetent at the time of his trial.

23    _____

24          [1] Petitioner was incarcerated at California State Prison-Sacramento when he filed this
      action.  Jurisdiction is therefore proper in this court.  See Braden v. 30th Judicial Circuit Court,
25    410 U.S. 484 (1973).  Respondent's motion to transfer the application to the United States
      District Court for the Central District of California was denied without prejudice by order filed
26    July 25, 2002 and has not be renewed.

                                                    1

FACTS[2]

[Petitioner] was convicted on March 19, 1999, of one count of second degree robbery in violation of Penal Code section 211.  He had been charged on February 19, 1997, with two counts of second degree robbery, one against victim, Lawrence Banner, and one against Kenroy Brackett, during the same incident which occurred on January 21, 1997.  As to each count, the information alleged five prior serious felony convictions, pursuant to Penal Code sections 667, subdivision (a)(1), and 1170.12, subdivisions (a) through (d), and two prior convictions pursuant to Penal Code section 667.5, subdivision (b).

[Petitioner]'s first trial ended in a mistrial on June 18, 1997, when the jury was unable to come to a verdict.  When the matter was called again for trial on October 7, 1997, defense counsel, Mr. Diaz, expressed doubts about [petitioner]'s competence to stand trial, so the court continued the trial and ordered a psychological examination pursuant to Evidence Code section 730.  After several continuances, the court received the experts' reports, found [petitioner] not mentally competent to stand trial, pursuant to Penal Code section 1368, committed [petitioner] to the Department of Mental Health, pursuant to Penal Code section 1370, and adjourned the proceedings.

On April 28, 1998, the court found [petitioner]'s mental competence to have been restored, and the proceedings were resumed.  The matter was set for trial, continued, and called again for trial on August 25, 1998.  Once again, [petitioner] was found not competent to stand trial, was remanded to the Department of Health, and the proceedings were adjourned.  They resumed on January 5, 1999, and [petitioner]'s second jury trial began on March 15, 1999.

Kenroy Brackett testified that he was a student at Dorsey High School at the time of the incident on January 21, 1997.  He was coming home from school at about 2:30 in the afternoon, with his friend, Lawrence Banner.  They had missed their usual bus on Jefferson, so decided to walk over to Adams, to catch the bus there.  They had just crossed Hillcrest at Adams, when three men approached them from behind, surrounded them, and asked where they were going.  Brackett continued to walk for approximately 15 to 20 feet, and [petitioner] said to him, "Come towards the phone and stay right in front of me."  While he was walking toward the pay phone, with his back to [petitioner], he heard one of the men say he had an "A-K 47," and he assumed the voice was [petitioner]'s.  Brackett turned around, and saw something on

---

[2] The facts are taken from the opinion of the California Court of Appeal, Second Appellate District, Division Four, in People v. Rice, No. B131768 (Oct. 11, 2000).

2

[petitioner]'s person that looked like a gun.  One of the other men, who wore a baseball cap with a "W" on it, demanded money, and Brackett initially claimed he had none, but acquiesced when the man pushed him.  Brackett gave him five dollars, fearing he might otherwise be shot.  [Petitioner] kept the gun tucked into his waist, and never took it out.  Brackett then proceeded across the street away from the men, he saw one of them strike or attempt to strike his friend Banner.  Banner then joined him across the street, and they passed a barber shop, where some one told them there were undercover police officers nearby.  The two friends did not attempt to contact the officers, but proceeded to the bus stop.

Lawrence Banner testified that he saw the three men running up to him and Brackett as they reached the intersection of Adams and Hillcrest.  The man in the baseball cap grabbed Banner's jacket around the area of his chest, and demanded money.  Banner saw [petitioner] talking to Brackett, and saw when appeared to be a gun on [petitioner]'s hip.  When Banner tried to get away, petitioner said, "Don't run, don't go anywhere, because [A-k] bullets will fly everywhere."  Then the man in the baseball cap took Banner's watch from him, and swung at him, skimming his ear.  When he and Brackett boarded the bus afterward, police officers arrived, took them off the bus, and transported them back to the scene, where they identified the three perpetrators, including [petitioner].

Los Angeles City Policy Detective Donald Walthers testified that he witnessed the incident from about 30 to 40 feet away, while he and his partner happened to be monitoring the area for narcotics activity from a parked car on Adams Boulevard, just East of Hillcrest.  When the three individuals approached Brackett and Banner, the man in the baseball cap, who was later identified as Shabazz, grabbed Banner, causing him to stumble into the street.  [Petitioner] stepped in front of Brackett, causing him to stop.  [Petitioner] lifted up his shirt, revealing what appeared to be weapon, although Walthers could not tell what sort of weapon it was.  He saw Banner reach into his pocket and hand something to Shabazz, and saw Shabazz remove a watch from Banner's arm.  He also saw Brackett reach into his pocket and hand something to [petitioner].  Shabazz took a swing at Banner, and when Banner ran, he stepped over to Brackett, and took a swing at him.

Walthers's partner called for back-up, and they followed the [petitioner], Shabazz, and the individual with them.  The officers took them into custody, and recovered a B.B. gun from [petitioner]'s waistband, but found no money on him.  From Shabazz, they recovered Banner's watch and five dollars.  When a patrol unit arrived, they left the three individuals with them, and retrieved Brackett and Banner from the bus they had just boarded.  They transported the two friends back to the arrested individuals, where they identified them as the perpetrators.

3

1
2
3
4
5

> The defense presented no evidence.  On March 19, 1999, the jury found [petitioner] guilty of count 1, the second degree robbery of Lawrence Banner, and not guilty of count 2, the second degree robbery of Kenroy Brackett.  On March 22, 1999, the court found the allegations of prior convictions to be true, giving [petitioner] "three strikes."  (See Pen. Code, § 667, subd. (e)(2)(A)(ii).)  Thus, on April 19, 199, [petitioner] was sentenced to imprisonment for 25 years to life, plus two consecutive enhancements of 5 years each, for a total of 35 years to life.

6  (People v. Rice, slip op. at 2-5.)

7                                         ANALYSIS

8  I.  Standards for a Writ of Habeas Corpus

9         Federal habeas corpus relief is not available for any claim decided on the merits in

10  state court proceedings unless the state court's adjudication of the claim:

11
12

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

13
14

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

15  28 U.S.C. § 2254(d).

16         Under section 2254(d)(1), a state court decision is "contrary to" clearly

17  established United States Supreme Court precedents if it applies a rule that contradicts the

18  governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

19  indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

20  result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406

21  (2000)).

22         Under the  "unreasonable application" clause of section 2254(d)(1), a federal

23  habeas court may grant the writ if the state court identifies the correct governing legal principle

24  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

25  prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

26  simply because that court concludes in its independent judgment that the relevant state-court

4

1  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

2  application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

3  (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

4  question, is left with a 'firm conviction' that the state court was 'erroneous.'")

5          The court looks to the last reasoned state court decision as the basis for the state

6  court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

7  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

8  habeas court independently reviews the record to determine whether habeas corpus relief is

9  available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

10 II.  Petitioner's Claims

11     A.  Improper Jury Instruction

12          Petitioner's first claim is that his constitutional rights were violated by the use of

13 CALJIC 17.41.1 given as part of the jury instructions at his trial.  The instruction was given as

14 follows:

15          The integrity of a trial requires that jurors, at all times during their
           deliberations, conduct themselves as required by these instructions.
16          Accordingly, should it occur that any juror refuses to deliberate or
           expresses an intention to disregard the law or decide the case based
17          on [penalty or punishment, or] any [other] improper basis, it is the
           obligation of the other jurors to immediately advise the Court of
18          the situation.

19 (Appendix 8 to Petition for Writ of Habeas Corpus, filed April 19, 2002.)  Petitioner claims the

20 instruction violated his Sixth and Fourteen Amendment rights to a fair jury trial, to private jury

21 deliberations and the independent judgment of the jury, infringed on the jury power of

22 nullification, and constituted improper coercion.

23          The state court of appeal rejected this claim finding that even if it was error to

24 give the instruction any error was harmless because "evidence of guilt is overwhelming, there

25 was no jury deadlock, no holdout jurors, no report to the court of any juror refusing to follow the

26 /////

                                          5

1  law, and no indication that the instruction affected the verdict in any way." (People v. Rice, slip

2  op. at 10.)

3              The United States Court of Appeals for the Ninth Circuit has recently rejected a

4  similar challenge on federal habeas corpus to the use of CALJIC 17.41.1.  In Brewer v. Hall, 378

5  F.3d 952 (9th Cir. 2004), the court of appeals stated:

6              [N]o Supreme Court case establishes that an instruction such as
              CALJIC 17.41.1 violates an existing constitutional right.  Indeed,
7              related statements of the Court have emphasized that "the right to a
              representative jury [does not include] the right to be tried by jurors
8              who have explicitly indicated an inability to follow the law and
              instructions of the trial judge."  Lockett v. Ohio, 438 U.S. 586,
9              596- 97, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); see also Sparf v.
              United States, 156 U.S. 51, 72-73, 15 S.Ct. 273, 39 L.Ed. 343
10             (1895) (stating that jurors are bound to follow the law as stated by
              the trial court).  Nor has the Supreme Court found a constitutional
11             violation in removing jurors who are unwilling or unable to follow
              the trial court's instructions.  Cf. Morgan v. Illinois, 504 U.S. 719,
12             730, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992) (discussing purposes
              of the voir dire process).

13

14  Brewer, 378 F.3d at 956.  In accordance with Brewer, the state court's rejection of this claim was

15  not contrary to any established United States Supreme Court precedent.  Petitioner's first claim

16  for relief must be denied.

17          B.  Eighth Amendment

18             Petitioner's second claims that his sentence of thirty-five years to life is cruel and

19  unusual punishment under the Eighth Amendment to the United States Constitution.  This claim

20  was raised by petitioner on direct appeal from his conviction.  (See, e.g., Appellant's Opening

21  Brief, lodged February 14, 2003.)  The last reasoned state court decision on that claim is the

22  decision of the California Court of Appeal for the Second Appellate District.  The state court of

23  appeal rejected the claim, concluding "from the nature of the crime and [petitioner]'s record that

24  lengthy incarceration is justified and not 'so disproportionate to the crime for which it is inflicted

25  that it shocks the conscience and offense fundamental notions of human dignity.'"  (People v.

26  Rice, slip op. at 13-14.

1      As noted above, the federal habeas corpus statute provides that habeas corpus
2  relief is unavailable for any claim denied on the merits in State court "unless the adjudication of
3  the claim-- (1) resulted in a decision that was contrary to, or involved an unreasonable
4  application of, clearly established Federal law, as determined by the Supreme Court of the United
5  States." 28 U.S.C. § 2254(d)(1).  In Lockyer v. Andrade, 538 U.S. 63 (2003), the United States
6  Supreme Court made clear that, in the context of an Eighth Amendment challenge to a prison
7  sentence, the "only relevant clearly established law amenable to the 'contrary to' or
8  'unreasonable application of' framework is the gross disproportionality principle, the precise
9  contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case."
10  Andrade, 538 U.S. at 73 (citing Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); Solem v.
11  Helm, 463 U.S. 277, 290 (1983); and Rummel v. Estelle, 445 U.S. 263, 272 (1980)).  The
12  Andrade Court concluded that two consecutive 25-years-to- life sentences with the possibility of
13  parole, imposed under California's three-strikes law following two petty theft convictions with
14  priors, did not amount to cruel and unusual punishment.  Id. at 77; see also Ewing v. California,
15  538 U.S. 11 (2003) (holding that a sentence of 25 years to life imposed for felony grand theft
16  under California's three-strikes law did not violate the Eighth Amendment).  "Outside the context
17  of capital punishment, successful challenges to the proportionality of particular sentences have
18  been exceedingly rare."  Rummel, 445 U.S. at 272.

19      The Supreme Court has cautioned federal courts to be "'reluctan[t] to review
20  legislatively mandated terms of imprisonment.'"  Hutto v. Davis, 454 U.S. 370, 374 (1982)
21  (quoting Rummel, 445 U.S. at 274).  "Generally, as long as the sentence imposed upon the
22  defendant does not exceed statutory limits, [a federal court] will not overturn it on eighth
23  amendment grounds."  United States v. Zavala-Serra, 853 F.2d 1512, 1518 (9th Cir. 1988).  See
24  also Belgarde, 123 F.3d at 1215; United States v. McDougherty, 920 F.2d 569, 576 (9th Cir.
25  1990).  "[A] sentence within the limits set by a valid statute may not be overturned on appeal as
26  cruel and unusual punishment unless the sentence is so 'grossly out of proportion to the severity

1  of the crime' as to shock our sense of justice." United States v. Cupa-Guillen, 34 F.3d 860, 864

2  (9th Cir. 1994) (quoting United States v. Vega-Mejia, 611 F.2d 751, 753 (9th Cir. 1979)) (citing

3  United States v. Washington, 578 F.2d 256, 258-59 (9th Cir. 1978)).

4         In Andrade, the Supreme Court upheld imposition of two consecutive twenty-five

5  years to life sentences under California's three strikes law after Andrade was convicted of petty

6  theft of $150.00 worth of videotapes, with several prior convictions for petty theft, burglary and

7  drug offenses.  538 U.S. at 66-67.  In Ewing, the Court upheld a sentence of twenty-five years to

8  life imposed under the same law following a conviction for grand theft involving three golf clubs

9  valued at $399.00 each with four prior felony convictions for burglary and robbery.  538 U.S. at

10  17-18.  See also Rummel, supra (upholding life sentence with the possibility of parole for

11  recidivism based on three underlying felonies of fraudulent use of a credit card for $80.00,

12  passing a forged check for $28.36, and obtaining $120.75 under false pretenses); Harmelin, supra

13  (upholding sentence of life without the possibility of parole for a first offense of possession of

14  more than 650 grams of cocaine).

15         Under the decisions announced in Andrade and Ewing, petitioner's case is not one

16  of those "exceedingly rare" sentences fitting within the contours of the "gross disproportionality"

17  principle, and thus does not constitute cruel and unusual punishment.  Petitioner was convicted

18  by a jury of one count of second degree robbery.[3]  In addition, the court found true allegations

19  that petitioner had suffered three prior robbery convictions and two prior attempted robbery

20  convictions, as well as a prior convictions for possession of marijuana for sale and selling or

21

22         [3] The United States Court of Appeals for the Ninth Circuit has recently set forth
   principles to guide the determination of whether a particular sentence is one of the "exceedingly
23  rare" sentences that violate the Eighth Amendment.  See Reyes v. Brown, 399 F.3d 964 (9th Cir.
   2005); see also Rios v. Garcia, 390 F.3d 1092 (9th Cir. 2004); Ramirez v. Castro, 365 F.3d 755
24  (9th Cir. 2004).  In order to come within the exception announced by the court of appeals at a
   minimum the commitment offense must be a "wobbler" under state law, i.e., a crime that can be
25  punishable as either a felony or a misdemeanor.  See Ferreira v. Ashcroft, 382 F.3d 1045, 1051
   (9th Cir. 2004).  Petitioner's commitment offense, second degree robbery, is punishable only as a
26  felony under California law.  See Cal. Penal Code §§ 211, 213.  His sentence therefore cannot
   come within the exception first announced in Ramirez, supra.

1  furnishing a substance falsely represented to be a controlled substance.  Petitioner's Eighth

2  Amendment claim should be denied.

3        C.  Competence to Stand Trial

4              Petitioner's third claim for relief is that his due process rights were violated

5  because he was incompetent at the time of trial.  This claim was raised on habeas corpus in the

6  California Court of Appeal for the Second Appellate District and in the California Supreme

7  Court.  (See Petition for Writ of Habeas Corpus filed with the California Supreme Court, lodged

8  February 14, 2003 (State Supreme Court Petition).)  The last reasoned rejection of the claim is

9  the decision of the state appeals court, which found that petitioner had "made no showing" that

10  he was incompetent to stand trial.  (Ex. G to State Supreme Court Petition; App. 6 to Petition for

11  Writ of Habeas Corpus.)

12              "A defendant may not be criminally prosecuted while he is incompetent and the

13  state must give him access to procedures for determining his competency."  Odle v. Woodford,

14  238 F.3d 1084, 1087 (9th Cir. 2001) (citing Medina v. California, 505 U.S. 437, 449 (1992) (in

15  turn citing Drope v. Missouri, 420 U.S. 162, 172-73 (1975); Pate v. Robinson, 383 U.S. 375, 386

16  (1966)).  "The substantive standard for determining competence to stand trial is whether [a

17  defendant] had 'sufficient present ability to consult with his lawyer with a reasonable degree of

18  rational understanding ... [and] a rational as well as factual understanding of the proceedings

19  against him.'"  Torres v. Prunty, 223 F.3d 1103, 1106 (9th Cir. 2000) (quoting Dusky v. United

20  States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam).  "'[W]here the

21  evidence raises a "bona fide doubt" as to a defendant's competence to stand trial, the trial judge

22  on his own motion must ... conduct a hearing to determine competency to stand trial.'"  Torres at

23  1106-07 (9th Cir. 2000) (quoting De Kaplany v. Enomoto, 540 F.2d 975, 979 (9th Cir.1976) (en

24  banc)) and citing Drope,  420 U.S. at 172-73; Pate, 383 U.S. at 385.

25  /////

26  /////

9

1       The record reflects that petitioner was twice found not competent to stand trial

2  prior to commencement of his second jury trial.[4]  (People v. Rice, slip op. at 2.)  His competence

3  was certified the second time on January 5, 1999, and his second jury trial commenced on March

4  15, 1999.  (Id.)  Petitioner contends that by the time his second trial commenced, his competence

5  had again deteriorated and he was no longer competent to stand trial.  To support this claim,

6  petitioner argues that he was not housed in a medical facility following his return from his

7  second commitment to Patton State Hospital, nor was he provided with the medication

8  prescribed by his treating physicians at Patton.  In addition, petitioner contends that the trial

9  transcript is "replete with evidence of psychiatric decompensation."  (Memorandum of Points

10  and Authorities in Support of Petition for Writ of Habeas Corpus, filed October 1, 2002, at 8.)  In

11  opposition to the claim, respondent suggests that the behavior at his second trial on which

12  petitioner now relies was in fact malingering and argues that other behavior by petitioner during

13  both trial and sentencing proceedings demonstrates that he was in fact competent to stand trial.

14       Prior to commencement of his second trial, petitioner was twice found

15  incompetent to stand trial and committed to a state mental hospital.  (Exs. A-C to Petition for

16  Writ of Habeas Corpus filed in the California Supreme Court, Case No. S099428, July 30, 2001.)

17  On November 25, 1998, following his second commitment, he was found restored to mental

18  competence and returned to court to stand trial.  (Id. at Ex. D.)  The discharge report

19  recommended that petitioner be placed in a treatment facility rather than a jail and noted that it

20  was "critical" that petitioner continue taking his prescribed medication.  (Id.)

21       It appears that petitioner was housed in the county jail and not in a treatment

22  facility during his second trial.  (See, e.g., Clerk's Transcript of Proceedings, at 131.)  In

23  addition, there is one indication in the record of petitioner "starting to act up" at the start of his

24  second jury trial.  (Reporter's Transcript of Proceedings (RT), at 83-86.)  However, the

25  _____

26       [4]  Petitioner's first trial ended in a mistrial.  See People v. Rice, slip op. at 2.

1  remainder of the record contains no evidence of abnormal behavior by petitioner during the jury

2  trial.  (RT at 86-252.)  At the conclusion of the prosecution's case-in-chief, petitioner made

3  statements in the record asserting that he should be permitted to testify without his criminal

4  history coming into the record.  (RT at 185-35)  The court recessed the trial to permit petitioner

5  to consult with his lawyer about testifying, and thereafter the defense rested without testimony

6  from petitioner.  (Id. at 185-36.)  In a hearing on March 22, 1999, petitioner made numerous

7  statements in the record.  (Id. at 253-266.)  Many of petitioner's statements appear to have been

8  angry and/or confrontational, but the record as a whole reflects that petitioner understood the

9  circumstances of his conviction and impending sentencing.  (Id.)[5]

10         After careful review of the entire record herein, this court finds insufficient

11  evidence that petitioner was incompetent during his March 1999 jury trial to support petitioner's

12  third claim for relief.  The state appeals court's determination that petitioner had made "no

13  showing" of incompetence to stand trial at the time he was tried and convicted is not an

14  unreasonable factual determination on this record.  For these reasons, petitioner's third claim for

15  relief should be denied.

16         In accordance with the above, IT IS HEREBY RECOMMENDED that petitioner's

17  application for a writ of habeas corpus be denied.

18         These findings and recommendations are submitted to the United States District

19  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days

20  after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties.  Such a document should be captioned

22

23     [5]  At sentencing on April 19, 1999, the court noted that petitioner "barked, yelled and was
24  otherwise disruptive during the entire sentencing proceedings."  (Ex. E to California Supreme
    Court Petition, at 8.)  This hearing took place one month after the conclusion of petitioner's jury
    trial and petitioner's behavior therein does not support a finding that he was incompetent at the
25  time of trial.  In addition, at that hearing, petitioner asserted that he had not received medication
    in almost four months, and that he had tried to commit suicide.  (Id. at 4-5.)  The record before
26  this court is silent with respect to the accuracy of those unsworn statements.

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2  shall be served and filed within ten days after service of the objections.  The parties are advised

3  that failure to file objections within the specified time may waive the right to appeal the District

4  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5  DATED:  June 2, 2005.

6

7                                                    UNITED STATES MAGISTRATE JUDGE

8

9  12
10 rice0848.157